**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

Cynthia Lochnicki and Chequwan Potter *on behalf of themselves and all others similarly situated,*

*Plaintiff,*

-against-

Planned Building Services, Inc., Planned Security Services, Inc., and Planned Lifestyle Services, Inc.,

*Defendants.*

**CLASS ACTION COMPLAINT**

**Jury Trial Demanded**

Plaintiff Cynthia Lochnicki ("Plaintiff"), on behalf of herself and all others similarly situated (collectively, "Plaintiffs"), brings this action against Planned Building Services, Inc. ("Planned Building Services"), Planned Security Services, Inc. ("Planned Security Services"); and Planned Lifestyle Services, Inc. ("Planned Lifestyle Services") (collectively "Planned" or "Defendants") for violations of the New York State Labor Law ("NYLL"), the New York Code of Rules and Regulations ("NYCRR"), the New York Wage Theft Prevention Act, the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL") and any other causes of action that can be inferred from the facts set forth herein:

**NATURE OF THE ACTION**

1.      This is a class action on behalf of all Planned employees in the State of New York that engage in manual work in the course of their employment. This collective and class action is brought to remedy untimely wage payments. Plaintiff seeks on behalf of herself and the putative class declaratory and injunctive relief; an award of monetary damages for the economic losses caused by Defendant's unlawful conduct, including unpaid wages, liquidated damages under the NYLL and the NYCRR; statutory damages; prejudgment interest pursuant to the NYLL; reasonable attorneys fees; costs of this action; and any such further relief this court

1

deems just and equitable.

2.      New York Law requires companies to pay their manual workers on a weekly basis unless they receive an express authorization to pay on a semi-monthly basis from the New York State Department of Labor Commissioner.  *See* New York Labor Law ("NYLL"), Article 6, §191.

3.      The New York Court Of Appeals has explained that this law is "intended for the protection of those who are dependent upon their wages for sustenance."  *People v. Vetri*, 309 N.Y. 401, 405 (citing former Labor Law § 196).

4.      Plaintiffs also seek to represent a subclass of all Planned employees who were required to wear a uniform, responsible for its maintenance, and were paid an hourly rate at or within $0.50 of the minimum wage.  And a further subclass for all employees, who like Plaintiff Chequwan Potter were entitled to spread of hours pay and did not receive it.

5.      Plaintiff Cynthis Lochnicki also brings this to recover for her individual claims against Defendants for sexual harassment, hostile work environment, wrongful termination, and retaliation under the NYSHRL and NYCHRL.

## JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified at 28 U.S.C. § 1332(d), because the amount in controversy against the Defendants in this matter exceeds the sum or value of $5,000,000, exclusive of interest and costs,  and Plaintiffs and the members of the proposed class are citizens of states different from that of Defendants.

7.      This court also has diversity jurisdiction over this action pursuant to 28 U.S.C.A. § 1332(a)(1) and (c)(1). There is complete diversity of citizenship between the opposing parties since Plaintiff resides in New York State and is a citizen of that state. While all three

2

Defendants are citizens of New Jersey.

8.    Jurisdiction is proper in this Court for the non-class claims pursuant to 28 U.S.C. § 1367.

9.    This Court has personal jurisdiction over Defendants because Defendants conduct significant business in New York.  Defendants own, operate, and maintain hundreds of commercial real estate properties throughout New York.

10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the events giving rise to Plaintiffs' claims occurred in the Eastern District of New York and Defendants conduct business in this District.

## THE PARTIES

11.    Plaintiff Cynthia Lochnicki is an adult, over eighteen years old, a citizen of New York State and resides in Kings County, State of New York.

12.    Plaintiff Chequwan Potter is an adult, over eighteen years old, a citizen of New York State and resides in Kings County, State of New York.

13.    Plaintiff Lochnicki was employed by Defendants from around in or about May 2022 to in or about September 2022.

14.    Plaintiff Potter was employed by Defendants from on or around December 30, 2016 and remained employed continuously until on or around on or around January 1, 2021.

15.    Plaintiffs were each a covered employee within the meaning of the NYLL.

16.    Planned Companies, headquartered in Parsippany, NJ, consists of three real estate service divisions – Planned Building Services, Inc., Planned Security Services, Inc., and Planned Lifestyle Services, Inc.

17.    Through these three (3) service brands, Planned Companies provides industry leading janitorial, maintenance, concierge/front desk and security services to a wide array of

clients. Planned Companies is known across New York and New Jersey as the industry leader in janitorial services, security services and concierge services, and has quickly branched out from being the leader in NYC, Brooklyn and Manhattan to being a leader across the Northeast.

18.    Planned Companies' portfolio comprises over 400 residential, corporate, commercial and retail properties throughout the northeast corridor, with operations currently in seven (7) states – Connecticut, New York, New Jersey, Pennsylvania, Maryland, Virginia and the District of Columbia. With more than 100 years and 4 generations of experience, Planned Companies has become one of the fastest growing and most respected real estate service providers within the industry.

19.    Planned Companies is passionately driven to be the most accountable and responsive customer service organization providing janitorial, maintenance, concierge/front desk and security services. Rather than turning to several janitorial companies, security companies and concierge companies, customers can count on one company for quality service across the board.

20.    Defendants were covered employers within the meaning of the NYLL, and at all times relevant, employed Plaintiff.

21.    Defendants maintained control, oversight, and direction over Plaintiff and similar employees, including timekeeping, payroll, and other employment practices that applied to them.

22.    Defendants apply the same employment policies, practices, and procedures to all Manual Workers in its operation, including policies, practices and procedures with respect to payment of wages.

23.    Each Defendant is considered a large employer, having at least 11 or more employees during the duration of Plaintiff's employment.

24.     Defendants each maintained control, oversight, and direction over Plaintiffs in regards to timekeeping, payroll, and other employment practices, and functioned as an employer pursuant to the NYLL.

25.     Defendants, by virtue of ownership, management, and control over the wages and work of Plaintiff, are each considered an employer under the NYLL §190(3).

26.     Defendants apply the same employment policies, practices, and procedures to all Manual Workers in its operation, including policies, practices, and procedures with respect to frequency of payment of wages.

## PLAINTIFFS FACTUAL ALLEGATIONS

### *PLAINTIFF CYNTHIA LOCHNICKI*

27.     Planned assigned Plaintiff Lochnicki to work at a building in Kew Gardens, Queens County, New York.

28.     Planned provided security and maintenance services at that building.

29.     The building's address was 8002 Union Turnpike, Kew Gardens, NY.

30.     Throughout her employment, over twenty-five percent of Plaintiff's duties were physical tasks, including standing guard, going on foot patrols, investigating incidents, escorting individuals throughout the building, and other physical tasks required to be performed by building security personnel in a large New York City commercial building, including for example assisting vendors like the cable company, power company exterminators, and others gain access to the building, including escorting them to areas of the building, and opening doors and gates for them.

31.     Despite regularly spending more than twenty-five percent of her shift performing these physical tasks, Plaintiff has been compensated by Defendants on a bi-weekly basis.

32.     In this regard, Defendants failed to pay Plaintiff her wages earned from January

as required by NYLL § 191(1)(a).

33.    Plaintiff was required to wear a uniform at all times while employed by Defendants.

34.    As per the employee handbook, and management, Plaintiff was informed that the uniform included a shirt with a security officer logo. This was not a part of Plaintiff's regular wardrobe.

35.    Defendant provided Plaintiff with the shirts but did not offer to maintain or launder them in any way.

36.    Plaintiff was not allowed to select the uniform shirt and no variation was permitted by Defendants from the shirt she was provided which had a security officer logo on it.

37.    Plaintiff was required by Defendants to wear this uniform every shift, and that it was clean and presentable.

38.    Plaintiff did, in fact, wear the uniform every shift and it was in fact clean and presentable.

39.    Defendants did not launder Plaintiff's required uniforms, nor did Defendants offer to launder the required uniforms.

40.    Plaintiff's uniforms were issued by Defendants to them for the expressed benefit of Defendants and it was a condition of Plaintiff's employment to wear them in a clean condition during each shift.

41.    Defendants never paid any uniform maintenance pay or reimbursement for the cost of maintaining the uniform or the cost of the white oxford shirts Plaintiff bought with his own money.

42.    Plaintiff was entitled to additional pay for time spent off the clock and money spent in laundering and maintaining Defendants' uniform.

43.     Because of Defendants' improper compensation policies, Plaintiff was deprived of pay, in direct violation of the NYLL.

44.     This pattern of conduct was continuous throughout Plaintiff's employment.

45.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

46.     During the employment, Plaintiff worked on a team of security guards, which was made up of mostly men.

47.     One of her co-workers, who she worked alongside throughout the entire employment was named Darington.

48.     He engaged in repeated acts of sexual harassment.

49.     Immediately upon meeting Darington, Darington began to flirt with her.

50.     He asked her out several times and was told no.

51.     He sent her unwelcome romantic text messages.

52.     He would start and make uncomfortable eye contact.

53.     On one occasion, he even ran up to a door where Plaintiff was behind and began banging on the door so loud while she was on my lunch break because he was frustrated that she kept rejecting his advances.

54.     Around July, Plaintiff made her first complaint to management about Darington.

55.     A complaint was made to Valdana, a Manager at Planned Companies. The complaint was made to face to face.  Cynthia said Darington is always flirting and I find it offensive that he keeps asking me out after I told him I'm not interested.  She also complained about the starting and eye contact he was making.

56.     Valdana said that they will try to move him to a different shift/site so he does not work with her.

57.     Between July and September she continued to work alongside Darington

virtually all the time the same as before

58.    A second complaint was also made about Darington.  Second complaint about

Darington was made to the Supervisor of Security Guards, first name Robert, and last name

unknown but he had been at the building for more than 15 years and was very well known.

Robert was shown the unwelcome text messages and told about the emotion and physical abuse.

He was shocked.  But nothing happened in terms of corrective action against Darington and

redress for Plaintiff.  In fact, about 20 days letter Planned terminated Plaintiff without cause.

59.    Throughout the employment, Plaintiff was an exemplary employee and Planned

did not have any legitimate reason to terminate her.

***PLAINTIFF CHEQUWAN POTTER***

60.    Plaintiff Chequwan Potter was hired, as a "concierge," on or around December

30, 2016 to work at a building located at 101 Avenue A, New York, New York 10009, and

remained employed continuously until on or around on or around January 1, 2021.

61.    As concierge, Defendant required Plaintiff Chequwan Potter to perform a variety

of physical tasks over 25% of the time, including but not limited to: (1) signing in residents and

visitors; (2) receiving packages; (3) lifting packages, and bringing them to elevator operators;

and (4) moving packages to storage.

62.    Plaintiff Chequwan Potter worked for Defendant, full-time, five days a week

from 7:00AM to 3:00PM.

63.    Plaintiff Chequwan Potter typically worked over 40 hours per week, with

Defendant occasionally requiring him to work as many as 50-55 hours per week.

64.    While Plaintiff Chequwan Potter's work schedule was 7:00 am to 3:00 pm

Monday to Friday, at least twice per week on average, Defendant required Plaintiff to work past

3:00 pm until as late as midnight if one of Plaintiff's coworkers did not show up for work to

relieve him, or his replacement was running late.

65.    On these days, Plaintiff Chequwan Potter worked more than ten hours in a single shift.

66.    Defendant failed to pay Plaintiff Chequwan Potter the required spread of hours premium of one additional hours' pay at the applicable minimum wage rate on days when he worked more than ten hours.

67.    To the best of Plaintiff Chequwan Potter recollection, Defendant paid him $13.00 per hour from December 2017 to December 2018.  On or around December 2018, Plaintiff recalls being paid $18.00 per hour, and then $17.00 per hour starting sometime in 2020.

68.    Plaintiff Chequwan Potter tiff is not in possession of complete records of his wages and reserves the right to amend the above hourly wage rate upon discovery of Defendant's payroll records.

69.    At all times, Defendant paid Plaintiff Chequwan Potter on a bi-weekly basis.

### RULE 23 CLASS ACTION ALLEGATIONS

### Untimely Wage Payment Class

70.    Pursuant to Fed. R. Civ. P. 23, Plaintiffs seek to represent a class defined as all persons employed by Defendant in the State of New York over the last six years who (1) earned nine hundred dollars a week or less; and/or (2) did not have the authority to hire and fire other employees (the "Class").  Members of the Class include but are not limited to persons employed in the following four groupings: Janitorial; Concierge; Security; and Maintenance; and the following capacities: Security Guard; Concierge; Security Personnel; Janitor; Residential Supervisor; Custodian; Porter; Patrol; Package Specialist; Superintendent; and others.

71.    The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the

Court.

72.     There are more than 200 members and Plaintiffs' claims are typical of those other members, in that any one would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

73.     Plaintiffs and the Proposed Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct.

74.      Defendants' corporate-wide policies and practices affected everyone who worked in every store in the same way.

75.     Plaintiffs are able to fairly and adequately protect the interests of the Proposed Class and have no interests antagonistic to it.

76.     Plaintiffs are represented by attorneys who are experienced and competent to bring this action.

77.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

78.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:  whether Defendant was required to pay class members on a weekly basis, whether class members were paid on a weekly basis, and whether Defendant violated NYLL § 191.

**Uniform Maintenance Class and Spread of Hours Class**

79.     The Proposed Uniform Maintenance Class and Spread of Hours Class is defined as:

>    All employees of Defendants who were required to wear a uniform and earned the minimum wage or within $0.50 of the minimum wage in New York.

80.     The members of the Proposed Class are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

81.     There are more than 200 members and Plaintiffs' claims are typical of those other members, in that any one would seek the same discovery, make the same legal arguments, and rely on the same factual record for summary judgment.

82.     Plaintiffs and the Proposed Class have all been injured in that they have been uncompensated, under-compensated, or untimely compensated due to Defendant's common policies, practices, and patterns of conduct.

83.      Defendants' corporate-wide policies and practices affected everyone who worked in every store in the same way.

84.     Plaintiffs are able to fairly and adequately protect the interests of the Proposed Class and have no interests antagonistic to it.

85.     Plaintiffs are represented by attorneys who are experienced and competent to bring this action.

86.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similar persons to

prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

87.    Common questions of law and fact exist as to the Proposed Class that predominate over any questions only affecting Plaintiff and/or each member of the New York Class individually  and include, but are not limited to, the following:

a.  Were the Proposed Class members required to wear a uniform?

b.  What was their hourly rate of pay?

c.  Did they work a shift of split-shift in excess of ten hours per day?

## AS AND FOR A CAUSE OF ACTION

**New York Labor Law – Failure to Pay Timely Wages
(Brought on behalf of Plaintiff and Proposed Untimely Wage Payment
Class)**

88.    The timely payment of wages provisions NYLL § 191 and its supporting regulations apply to Defendant and protect Plaintiff and the Proposed Class.

89.    Defendant failed to pay Plaintiff and the Proposed Class on a timely basis as required by NYLL § 191(1)(a), which resulted in an underpayment.

90.    Manual Workers, as contemplated by NYLL § 191, are "dependent upon their wages for sustenance." People v. Vetri, 309 N.Y. 401, 405 (1955).

91.    All of Planned Companies employees with the title Concierge are Manual Workers as that term is used in Section 190(4) of the New York Labor Law.

92.    As such, the failure to provide wages owed to Plaintiff and all other similarly situated Manual Workers, according to NYLL § 191, constitutes an "especially acute injury." See Caul v. Petco Animal Supplies, Inc., No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 4407856, at *4 (E.D.N.Y. Sep. 27, 2021) (citing Vega v. CM & Associates. Contr. Mgmt., LLC, 175 A.D.3d 1144, 1146 (N.Y. 1st Dept. 2019)).

93.    Defendant's conduct also constitutes an "injury in fact" suffered by Plaintiff under Article III that is within the federal judicial power because Plaintiff has "suffered an injury in fact that is concrete, particularized, and actual or imminent." See Caul v. Petco (infra).

94.    Defendants' bi-weekly payment of Plaintiff and other similarly situated manual workers is in violation of NYLL § 191(1)(a) which requires weekly payment of Manual Workers.

95.    Defendants' conduct also deprived Plaintiff of the time-value of her earned wages, impairing his ability to save, invest, and utilize his wages in a timely manner as well as disrupting the payment of monthly expenses such as his credit card bill and gym membership.

96.    Due to Defendant's violations of the NYLL, Plaintiff and the New York Untimely Wage Payment Class are entitled to recover from Defendant the amount of the underpayments caused by their untimely wage payments as liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and  post-judgment interest as provided for by NYLL § 198.

## AS AND FOR A SECOND CAUSE OF ACTION

**New York Compensation Rules and Regulations –
Failure to Pay Uniform Maintenance Costs
(Brought on behalf of Plaintiff and Proposed Uniform Maintenance Class)**

97.    The uniform maintenance provisions NYCRR title 12 § 142-2.5(c)(1)(i) and its supporting regulations apply to Defendants and protect Plaintiff and other similarly situated workers.

98.    Defendants failed to pay Plaintiff and other similarly situated  uniform maintenance costs as required by NYCRR title 12 § 142-2.5 (c)(1)(i).

99.    Defendant did not launder Plaintiff's or the Class's required uniforms, nor did Defendant offer to launder them.

100.    Plaintiff and the Class's uniforms were issued by Defendant for the expressed benefit of Defendant and it was a condition of their employment to wear them during each shift.

101.    Defendant never paid to Plaintiff or the Class any uniform maintenance pay or reimbursement for the cost of maintaining uniforms.

102.    Plaintiff and the Class routinely spent time off-the-clock and money to clean and maintain their uniforms consistent with the uniform appearance standards Defendant required.

103.    The hourly rate paid by Defendant to Plaintiff and the Class were either the applicable minimum wage, or a rate that although above the minimum wage was effectively below the minimum wage when calculating the unpaid uniform maintenance pay.

104.    Defendant's conduct is in violation of Article 19 of the New York Labor Law and its supporting regulations, including 12 N.Y.C.R.R. Part 142 the Minimum Wage Order for Miscellaneous Industries and Occupations.

105.    Due to Defendants' violations of the NYLL, Plaintiff and other similarly situated workers are entitled to recover from Defendants the amount of their uniform maintenance fees plus liquidated damages, reasonable attorneys' fees and costs, and pre-judgment and post-judgment interest.

### AS AND FOR A THIRD CAUSE OF ACTION

### ON BEHALF OF PLAINTIFFS AND THE PROPOSED CLASS

*Violation of New York Labor Law - Failure to Pay Spread of Hours Pay*

106.    Plaintiffs re-allege and re-aver each and every allegation and statement contained in the paragraphs above of this Complaint as if fully set forth herein.

107.    NYLL §1901(1) defines "Spread of Hours" as follows: "The spread of hours is the interval between the beginning and end of an employee's workday. The spread of hours for any day includes working time plus time off for meals plus intervals off duty." (NYLL

§142-2.18).

108.    New York Labor Law provides that employers are required to pay a "spread of hours: of one (1) additional hour's pay at the basic minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours."

109.    Defendant failed to pay "spread of hours" premium to Plaintiff for each day worked in excess of ten (10) hours pursuant to New York State Department of Labor Regulations.

110.    Due to Defendant's NYLL violations, Plaintiff and the Class are entitled to recover from Defendant, unpaid spread of hours compensation, maximum liquidated damages, prejudgment interest, and attorney's fees and costs of the action, pursuant to NYLL §663(1).

## AS AND FOR A FOURTH CAUSE OF ACTION

**Sexual Harassment and Hostile Work Environment under the NYSHRL**

111.    Plaintiff alleges, and incorporates by reference the allegations in all previous paragraphs above as if set forth fully herein.

112.    Plaintiff was sexually harassed by a coworker while working for Defendants.

113.    The harassment was on the basis of her sex as that term is defined in the NYSHRL.

114.    The cumulative effect of this misconduct and the failure by management to take corrective action was that Plaintiff was forced to work in an environment with ongoing harassment and discrimination on a daily basis and experiencing stress, revulsion, and general emotional discomfort.

115.    By the aforementioned actions, Defendants discriminated against Plaintiff by subjecting her to sexual harassment and a hostile work environment on the basis of her sex in violation of NYSHRL § 296(1)(a).

116.    As a result of the discrimination engaged in by Defendants, Plaintiff has suffered damages, including deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, humiliation, and damage to reputation and career.

117.    Under the NYSHRL, § 290, et seq. Plaintiff is entitled to economic damages, including but not limited to loss of past and future income, compensation, and benefits, including interest thereon, as compensatory damages for his physical suffering and emotional distress.

118.    Defendants' discriminatory actions constituted willful violations of the NYSHRL, for which Plaintiff is entitled to punitive damages, pursuant to NYSHRL, § 297(9).

119.    Plaintiff is also entitled to attorney's fees pursuant to NYSHRL § 297(10), and costs of this action.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Sexual Harassment and Hostile Work Environment under the NYCHRL

120.    Plaintiff alleges and incorporates by reference the allegations in all previous paragraphs as if set forth fully herein.

121.    Plaintiff was treated in a discriminatory manner by Defendants on the basis of her sex as that term is defined in the NYCHRL.

122.    By the aforementioned actions, Defendants discriminated against Plaintiff by subjecting her to sexual harassment and a hostile work environment on the basis of her sex in violation of on the basis of her sex in violation of NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

123.    The Company is vicariously liable because it knew of the discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective

action; or, alternatively, should have known of Jackson's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

124.    As a result of the discrimination engaged in by Defendants, Plaintiff has suffered damages, including deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, humiliation, and damage to reputation and career.

125.    Under the NYCHRL, N.Y.C. Admin. Code § 8-101, Plaintiff is entitled to economic damages, including but not limited to loss of past and future income, compensation, and benefits, including interest thereon, as compensatory damages for his physical suffering and emotional distress.

126.    Defendants' discriminatory actions constituted willful violations of the NYCHRL, for which Plaintiff is entitled to punitive damages, pursuant to NYCHRL, N.Y.C. Admin. Code § 8-502(a).

127.    Plaintiff is also entitled to attorney's fees pursuant to NYCHRL § 297(10), and costs of this action.

<u>**AS AND FOR A SIXTH CAUSE OF ACTION**</u>

**Wrongful Termination Under the NYSHRL**

128.    Plaintiff alleges, and incorporates by reference the allegations in all previous paragraphs above as if set forth fully herein.

129.    When confronted with a choice between taking corrective action to remedy sexual harassment by a male guard against a female, Planned chose to protect the man and take no action.  Given the overwhelming number of men in the security department, and in charge of this decision, it comes as no surprise to Plaintiff.

130.    Plaintiff repeatedly informed Defendants that she was experiencing harassment

from her male colleagues.

131.    By the aforementioned actions, Defendants discharged Plaintiff from employment and discriminated against Plaintiff in the terms, conditions and privileges of her employment, on the basis of her disability in violation of NYSHRL § 296(1)(a).

132.    As a result of the discrimination engaged in by Defendants, Plaintiff has suffered damages, including deprivation of income and benefits, termination of employment, loss of opportunity for advancement and promotion, emotional pain and suffering, mental anguish, humiliation, and damage to reputation and career.

133.    Under the NYSHRL, § 290, et seq. Plaintiff is entitled to economic damages, including but not limited to loss of past and future income, compensation, and benefits, including interest thereon, as compensatory damages for his physical suffering and emotional distress.

134.    Defendants' discriminatory actions constituted willful violations of the NYSHRL, for which Plaintiff is entitled to punitive damages, pursuant to NYSHRL, § 297(9).

135.    Plaintiff is also entitled to attorney's fees pursuant to NYSHRL § 297(10), and costs of this action.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### Wrongful Termination Under the NYCHRL

136.    Plaintiff alleges and incorporates by reference the allegations in all previous paragraphs as if set forth fully herein.

137.    By the aforementioned actions Defendants, discharged from employment and discriminated against Plaintiff in the terms, conditions and privileges of his employment, on the basis of his disability in violation of NYCHRL, N.Y.C. Admin. Code § 8-107(1)(a).

138.    As a result of the discrimination engaged in by Defendants, Plaintiff has suffered

damages, including deprivation of income and benefits, termination of employment, loss of

opportunity for advancement and promotion, emotional pain and suffering, mental anguish,

humiliation, and damage to reputation and career.

139.    Under the NYCHRL, N.Y.C. Admin. Code § 8-101 , et seq. Plaintiff is entitled to

economic damages, including but not limited to loss of past and future income, compensation,

and benefits, including interest thereon, as well as compensatory damages for his physical

suffering and emotional distress.

140.    Defendants' discriminatory actions constituted willful violations of the

NYSHRL, for which Plaintiff is entitled to punitive damages, pursuant to NYCHRL, N.Y.C.

Admin. Code § 8-502(a).

141.    Plaintiff is also entitled to attorney's fees and costs of this action pursuant to

NYCHRL N.Y.C. Admin. Code § 8-502(g).

## AS AND FOR A EIGHTH CAUSE OF ACTION

### Retaliatory Termination Under the NYSHRL

142.    Plaintiff repeats and realleges each and every allegation made in the above

paragraphs of this Complaint.

143.    New York State Executive Law § 296(7) provides that it shall be an unlawful

discriminatory practice: "For any person engaged in any activity to which this section applies to

retaliate or discriminate against any person because [s]he has opposed any practices forbidden

under this article."

144.    Defendants have engaged in an unlawful discriminatory practice by retaliating,

and otherwise discriminating against Plaintiff because of Plaintiff's engagement in an activity

protected under this law.

## AS AND FOR A NINTH CAUSE OF ACTION

### Retaliatory Termination Under the NYCHRL

145.    Plaintiff repeats and realleges each and every paragraph above as if said paragraph was more fully set forth herein at length.

146.    The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

147.    Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually, and on behalf of all other similar persons,  respectfully request that this Court grant the following relief:

A. For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class members;

B. For an order declaring Defendants' conduct violates the law referenced herein;

C.  For an order finding in favor of Plaintiff and the Class on the counts asserted herein, and award all unpaid wages;

D. Liquidated damages;

E. Prejudgment and post-judgment interest;

F. Reasonable attorneys' fees and costs of the action

G. Such other relief as this Court shall deem just and proper.

## **JURY DEMAND**

Pursuant to FRCP 38 Plaintiff demands trial by jury on all issues.

Dated: New York, New York
     April 16, 2023

                       **LAW OFFICE OF MOHAMMED GANGAT**

By: _____
                       Mohammed Gangat, Esq.
                       675 Third Avenue, Suite 1810,
                       New York, NY 10017
                       (718) 669-0714
                       mgangat@gangatllc.com

                       *Attorneys for Plaintiff and*
                       *Proposed Class*